IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DOLWIN WHITE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. _____ |
| BLUE APRON, LLC | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Dolwin White files this, his Original Complaint, against Defendant Blue Apron, LLC, for violating federal law. The causes of action and summary of claims relating thereto are addressed below:

## I. PARTIES, JURISDICTION AND VENUE

1. Plaintiff Dolwin White ("Plaintiff" or "White") is a citizen and resident of Cedar Hill in Dallas County, Texas.

2. Defendant Blue Apron, Inc. (hereinafter referred to as "Defendant" or "Blue Apron"), is a foreign company authorized to and is doing business in the State of Texas. Blue Apron can be served through its registered agent Corporation Service Company dba CSC-Lawyers Incorporating Service Company, located at 211 E. 7th Street, Suite 620, Austin, TX 78701

3. The court has jurisdiction to hear the merits of Plaintiff's claims under 28 U.S.C. §1331 & §1343. Venue exists in this district and division as detailed in 28 U.S.C. §1391(b)(2).

## II. FACTUAL BACKGROUND

4. White was formerly employed by Defendant in Arlington, Texas in its sanitation department during the day shift.

5. In February 2019, White took time off work to receive medical treatment for alcoholism. White received proper approval for time off for this medical treatment after submitting various medical documents substantiating the medical reasons for being off work.

6. On April 20, 2019, Whit received two different letters related to his leave. One letter approved his leave from February 28, 2019 to April 14, 2019. The other letter denied medical leave from February 21, 2019 to February 27, 2019, stating "Invalid Supporting Documents"). This denial letter stated that White "might still be covered by the Americans with Disabilities Act." It is unknown why this period of leave was denied, as White's medical documentation confirmed he was under medical treatment during the entire period he was off work.

7. Prior to receiving the aforementioned-letters, White had already informed Defendant that he had been released to return to work by his physicians; however, no one from Blue Apron contacted White back regarding his return to work.

8. On April 24, 2019, a human resources representative informed White that Defendant was questioning "everything" about his leave, and they wanted him to come in to discuss a few of the days he had taken off. White asked why he had to do this again because his medical leave had already been approved and stated that "FMLA is a protected class." The only response White received was because he attendance points. Although he already provided all of the necessary information, White agreed to meet to go over the days he was required to take off work because of his medical issue.

---
**PLAINTIFF'S ORIGINAL COMPLAINT**　　　　　　　　　　　　　　　　　　　　　　　　　　　**PAGE 2**

9. During the meeting, human resources seemed satisfied with White's explanation and supporting documentation for his medical leave, and they began discussing his return to work. Human resources stated that instead of being returned to his day shift position, he would be moved to the night shift. White explained that his medication for anxiety and high blood pressure prevented him from working on the night shift. At that time, the human resources representative stated that there was a day shift position available and she would get back to him about returning to work.

10. Thereafter, the human resources representative called White and stated that his position on the day shift was not available, and other than working nights, he might be eligible to apply for completely different position during the day. No other options were provided. White explained that Defendant was required to provide him with the same or similar position and pay under federal law, but his protests were ignored, as human resources reiterated that his only options were to work nights or apply for a completely different day-time position. This completely different day-time position was not guaranteed because of Defendant's bid process. White explained that he knew Defendant had moved someone from the night shift to the day shift to take his position while he was out on medical leave, and human resources did not deny this. Instead, she stated that the position had not been "filled"; there had just been a "shift change."

11. After this conversation, White looked at other day shift positions that were available at Defendant's facility at the time, but (a) all of them paid significantly less than the sanitation position he had prior to his protected medical leave, and (b) it was unknown whether he would even been allowed to work in these positions.

12. Thereafter, White followed up with Defendant on numerous occasions, but he has not been accommodated or reinstated by Defendant to the same or similar position he has prior to

(a) taking his protected medical leave, (b) divulging his medical condition to Defendant, and (c) his complaints of failing to properly accommodate or reinstatement him as required federal law.

## III.   CAUSES OF ACTION

### A.   VIOLATION AMERICANS WITH DISABILITIES ACT

13.     Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 12 as if fully stated herein.

14.     Plaintiff has satisfied all jurisdictional prerequisites in connection with his claim under the Americans with Disabilities Act ("ADA"), 42 U.S. C. § § 12101 *et. seq.*

15.     Defendant is an "employer" as defined by the ADA, and Defendant employs more than 15 persons.

16.     Plaintiff was an "employee" of Defendant as defined by the ADA.

17.     Plaintiff is a qualified individual person with a disability as defined by the ADA.

18.     Defendant discriminated against Plaintiff, and subsequently discharged him, as result of his disability, record of said disability, and/or because it regarded him as disabled. Defendant also failed to accommodate Plaintiff's disability.  Because of his medical condition, Plaintiff has physical impairments that affect major life activities. In spite of Plaintiff's impairment, Plaintiff was still qualified to perform the essential functions of his job with or without a reasonable accommodation.

19.     As a result of Defendant's discriminatory actions in violation of the ADA, Plaintiff has suffered actual damages in the form of lost wages and benefits (past and future), as well as emotional pain, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.  As a result of these willful violations of the law, Plaintiff requests that he be awarded all compensatory and punitive damages, to which he is entitled, as outlined in the ADA, as well as all equitable relief, and attorney fees and costs.

### B. FAMILY MEDICAL LEAVE ACT VIOLATION BY DEFENDANT

20. Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 19 as if fully stated herein.

21. Plaintiff has satisfied all jurisdictional prerequisites in connection with his claim under the Family Medical Leave Act ("FMLA), 29 U.S.C. §§ 2601 *et. seq*.

22. Defendant is an "employer" as defined by the FMLA.

23. During the time that Plaintiff was employed by Defendant, he was an "eligible employee" as defined by the FMLA.

24. While Plaintiff was employed by Defendant, he had conditions that would be defined as a "serious health condition" under the FMLA.

25. Plaintiff was entitled to medical leave for his serious health condition as provided for in the FMLA.

26. Following his FMLA leave, Defendant failed to reinstate Plaintiff to his original (or an equivalent) position.

27. Defendant terminated Plaintiff's employment for the time he was forced to take off work for his serious health condition and/or the time he was expected to take off work in the future, which violates the protections of the FMLA.

28. Defendant's actions of terminating Plaintiff are considered interference of Plaintiff's protected rights under the FMLA, as well as retaliation for having made requests for time off protected under the FMLA.

## IV. PRAYER FOR RELIEF

Wherefore, Plaintiff requests that Defendant be cited to appear and answer, and that on final trial, Plaintiff have judgment against Defendant as follows:

a. Judgment against Defendant for actual damages, including lost wages and benefits (both past and future), the sum to be determined at time of trial;

b. Judgment against Defendant for compensatory damages in the maximum amount allowed by law, (including mental anguish and loss of enjoyment of life);

c. Judgment against Defendant for liquidated and/or punitive damages in the maximum amount allowed under law;

d. An order that Defendant take such other and further actions as may be necessary to redress its violation of the law, (including possibly injunctive relief, reinstatement or front pay);

e. Pre-judgment and post-judgment interest at the maximum amount allowed by law;

f. Costs of suit, including attorneys' fees;

g. The award of such other and further relief, both at law and in equity, to which Plaintiff may be justly entitled under the ADA and FMLA.

## V. JURY DEMAND

Plaintiff requests a trial by jury on all claims.

Respectfully submitted by:

/s/ Megan Dixon
Megan Dixon
State Bar No. 24079901
dixon@l-b-law.com

**BRAZIEL DIXON, LLP**
1910 Pacific Ave., Ste. 12000
Dallas, Texas 75202
Tel:  (214) 749-1400
Fax:  (214) 749-1010

**ATTORNEYS FOR PLAINTIFF**